UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

ALBERT HARRIOTT,

                                  Plaintiff,

       -vs-                               DECISION AND ORDER

ANTHONY ANNUCCI, Acting Commissioner      15-CV-6135 CJS
of the New York Department of Corrections, *et
al.*,

                                 Defendants.

———————————————————

**APPEARANCES**

For Plaintiff:                  Albert Harriott, *pro se*
                               DIN 12-A-3257
                               Upstate Correctional Facility
                               Post Office Box 2001
                               Malone, NY 12953

For Defendants:            Hillel David Deutsch, A.A.G.
                               NYS Attorney General's Office
                               Department of Law
                               144 Exchange Boulevard
                               Rochester, NY 14614

**INTRODUCTION**

    **Siragusa, J.** This *pro se* prisoner civil rights case is before the Court on Defendants' motion seeking "an order pursuant to Rule 12(c) of the Federal Rules of Civil Procedure dismissing portions of the Complaint, [and] scheduling a hearing on the question of exhaustion of administrative remedies…." Notice of Motion, May 15, 2017, ECF No. 67. Plaintiff filed a

response on June 12, 2017, ECF No. 71. Upon review of the papers, the Court grants Defendants' application in part, and denies it in part. Further, the Court will schedule an exhaustion hearing by separate order.

## BACKGROUND

Plaintiff commenced this action by filing a 122-page complaint on March 11, 2015, ECF No. 1. In it, he named 21 defendants and made claims, *inter alia*, that Defendants were violating his Eighth Amendment right against cruel and unusual punishment because they double-bunked him with a smoking inmate, ignored his complaints of chest pain, and retaliated against him for complaining to his family members about the second-hand smoke issue in the correctional facility. The Court originally assigned *pro bono* counsel to represent Plaintiff, but relieved counsel when Plaintiff complained that he did not approve of the counsel's amended complaint. Consequently, this case is proceeding on Plaintiff's original *pro se* complaint. Compl., Mar. 11, 2015, ECF No. 1.

## STANDARD OF LAW

### *Fed. R. Civ. P. 12(c) Judgment on the Pleadings*

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of New York v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir.2010) (citation omitted). The applicable standard for 12(b)(6) motions is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007).

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir. 1999).

A document filed *pro se* is "to be liberally construed," *Estelle v. Gamble,* 429 U.S.97, 106 (1976). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks omitted); *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

## ANALYSIS

Defendants move to dismiss portions of the complaint. They seek dismissal of three claims for failure to show deprivation of a protected liberty interest, specifically: (A) Claim 2, October 26, 2013, misbehavior report (random pat frisk); (B) Claim 3, February 14, 2014, misbehavior report (smuggling); and (C) Claim 4, February 16, 2014, misbehavior report (positive drug test). Defendants also seek dismissal of (D) Claim 5, conditions of confinement and deliberate medical indifference; and (E) Claim 8, Due Process claims for a July 10, 2013, incident. Further, Defendants seek a hearing on whether Plaintiff has properly exhausted his claims through the prison grievance system. Defendants submit that "all claims for retaliation and most claims for deliberate medical indifference were not properly grieved to exhaustion." Def.s' Mem. of Law 9, May 15, 2017, ECF No. 67-1.

Plaintiff's *pro se* complaint is lengthy and intermixes exhibits with the substantive complaint pages. Therefore, the Court will review the complaint in the order presented, separately addressing the motion to dismiss for each claim.

### *Claim # 1 Double-Bunking with a Smoker, August 2012*

Plaintiff's first claim starts on page 6 of his complaint (as numbered by the Court's CM/ECF system).[1] He alleges that in August 2012, he was transferred to Five Points Correctional Facility and double-bunked with a chain-smoking inmate who smoked "50–80 rolled cigarettes a day, mostly in in paper known as 'Blue thunder.' (This paper is the wrapping from the toilet tissue)." Compl. 6. Plaintiff wrote several letters complaining that second-hand smoke was adversely affecting his health, all to no avail. He then contacted his family to enlist their assistance in bringing the problem to the attention of the correctional staff. The family contacted a member of Congress, Hakeem Jeffries, who contacted the facility to address Plaintiff's complaint. Plaintiff claims that because he went "outside the facility," the correctional staff retaliated by bunking him "with chain-smoking Inmate after chain-smoking Inmate & forced him to endure second hand smoke for most of his 18 months at Five Pts. Corr. Facility." Compl. 7. He also claims that corrections officers encouraged other inmates to "smoke him out" in his cell and that he coughed up blood because of the throat irritation from the smoke. *Id.* Defendants do not move against this claim. Therefore, it may go forward as plead.

### *Claim # 2 Random Pat Frisk, October 26, 2013*

On the 24th page of his complaint, Plaintiff complains that on October 26, 2013, while he was an inmate at Five Points Correctional Facility, Corrections Officer M. Hunter ("Hunter") stopped him for a random pat frisk on his way to breakfast. He further claims that Hunter denied Plaintiff a meal because he was wearing more layers of clothing than permitted. Compl. 24.

---

[1] Plaintiff did not number the pages or paragraphs of his complaint. Consequently, the Court will refer to the page numbers assigned by the Case Management/Electronic Case filing system at the top of each page.

At the subsequent disciplinary hearing, Plaintiff states that the hearing officer, defendant Lt. Gianno, deprived him of due process. He claims Lt. Gianno did not permit him to call relevant witnesses, failed to produce a relevant video recording, and misidentified him in the video recording that was produced at the hearing. Further, he asserts that Lt. Gianno allowed defendant Sergeant Van Tasssle "to forge his name on the misbehavior report as endorser, days after when the Plaintiff asked for a dismissal on those grounds." *Id*. at 25. Lt. Gianno found Plaintiff guilty and sentenced him to 30 days of keep lock, 30 days of loss of privileges, no loss of good time, and no loss of visits. Compl. 25. Plaintiff eventually brought a New York Civil Procedure Law and Rules Article 78 action, which he alleged is still pending. *Id*.

Defendants argue that Plaintiff has failed to show he suffered a deprivation that was atypical and significant in relation to ordinary prison life. *Sandin v. Conner*, 515 U.S. 472 (1995). "'[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual.'" *Devon Smith, Plaintiff-Appellant, v. Leo C. Arnone, Individual &/or Official Capacities, et al., Defendants-Appellees, Stephen Faucher, Individual &/or Official Capacities, Defendant.*, No. 16-2000, 2017 WL 4994461, at *2 (2d Cir. Nov. 2, 2017) (quoting *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009)). Further, short periods of disciplinary confinement "where the plaintiff has not alleged any unusual conditions," do not require the district court to provide a detailed explanation of its determination that a prisoner's liberty interest has not been implicated. *Hynes v. Squillance*, 143 F.3d 653, 658 (2d Cir. 1998). Inasmuch as his deprivation was far less than 101 days, Plaintiff has failed to plead deprivation of a liberty interest. Consequently, Defendants are entitled to judgment under Rule 12(c) for Claim # 2.

***Claim # 3 Retaliation for an Article 78 Proceeding***

      Plaintiff's next claim refers to the New York Civil Procedure Law and Rules Article 78 proceeding he commenced in New York State Supreme Court regarding the random pat frisk and discipline for wearing too many layers of clothing. Compl. 41. Approximately three weeks after filing the Article 78 proceeding, Plaintiff received three infractions in tandem, which he alleges was in retaliation for his use of the State court. A random pat frisk on February 13, 2014, by defendant Correction Officer Gould, as Plaintiff headed to the mess hall for breakfast, revealed a small portion of barbeque sauce wrapped in plastic in Plaintiff's front pocket. Compl. 41. Correction Officer Gould ordered Plaintiff held in keep lock status for seventy-two hours while the substance in the packet was tested. Plaintiff was charged with the infraction of smuggling. The officer who conducted the disciplinary hearing, defendant Lt. Gianno, was the same person Plaintiff complained about in the Article 78 proceeding (for issuing an arbitrary and capricious decision in a prior disciplinary hearing). Compl. 42.

      At the disciplinary hearing, Plaintiff admitted he had the barbeque sauce in his pocket and stated he was unaware he could not bring food out of the mess hall. He notes, however, that he had observed other inmates have food items pulled from their pockets on the same day as he, only those inmates were not charged and the corrections officers simply tossed the items aside. Compl. 42. The hearing officer found Plaintiff guilty and sentenced him to 30 days of keep lock with loss of privileges except visits and good time. Compl. 43.

      Defendants argue that Plaintiff has failed to plead that he suffered an atypical and significant deprivation, and therefore, the Court should dismiss his Due Process claim. The Court agrees that the 30 days of keep lock is not an atypical and significant hardship. Therefore, Defendants are entitled to judgment on Claim # 3.

### *Claim # 4 Urinalysis, February 13, 2014*

Plaintiff claims that on February 13, 2014, at Five Points Correctional Facility, defendant Officer Henderson tested his urine, Compl. 47. The test was in connection with the barbeque sauce incident described in Claim # 3, above. *Id*. Plaintiff alleges that the positive result for cannabinoids was a set up. He states that while he was signing the paperwork informing him of the infraction, defendant Lt. Gianno, who was nearby, said to Plaintiff, "good luck with that dirty trick." Compl. 47. Plaintiff complains that the hearing officer, defendant Lt. Laramy, violated his Due Process rights when he not allow Plaintiff to properly present a defense to the charge. Lt Laramy found Plaintiff guilty of drug use and sentenced him to 90 days in the special housing unit ("SHU"), along with 90 days loss of privileges and loss of good time. Compl. 49. Plaintiff appealed the finding, but his punishment was affirmed on May 1, 2014. He then commenced an Article 78 proceeding. As with the situation in Claim # 3, Plaintiff includes further details on this incident under two different headings. The Court does not assume Plaintiff meant those two headings as further causes of action, but only as amplification on the claim.

Once again, Defendants point to the lack of an atypical and significant hardship in relation to ordinary prison life. Although this period of segregated confinement was longer than the others, Plaintiff has not plead that the conditions of this 90-day SHU confinement were "more onerous than usual." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). Consequently, Defendants are entitled to judgment on Claim # 4.

### *Claim # 5 – Contaminated Food, February 16 and 17, 2014*

Plaintiff alleges that while on keep lock at Five Points Correctional Facility on February 16 or 17, 2014, Correction Officer John Doe # 1 fed him intentionally contaminated food to

7

ensure he would not be a disruption in an upcoming scheduled search. Plaintiff further contends that because of this contaminated food, he had to attend sick call due to extremely severe stomach pains, profuse vomiting, and diarrhea with speckles of blood. Compl. 65. He alleges he was then escorted to the hospital building at Five Points Correctional Facility where Dr. John Doe (whom he describes as "a tall white male with glasses") diagnosed him on the spot without examination. Compl. 65. The doctor then placed Plaintiff on a clear liquid diet indefinitely "until it passed." Compl. 66. He asserts he was then placed in a filthy cell, had his repeated requests for blood testing denied, was fed an inadequate diet, and eventually discharged with no follow-up, and he suffered from extreme weight loss. Compl. 67. He makes claims for cruel and unusual treatment as well as denial of medical treatment. Finally, he argues that he was removed to the hospital and kept there by an individual masquerading as a medical doctor simply to make it easier for correctional officials to search his regular cell. Compl. 67.

Defendants counter that Plaintiff's claims are bold, conclusory, fantastical, and incredible as a matter of law. Pursuant to statute, the Court "shall dismiss the case at any time if the court determines that…the action…is frivolous or malicious…or fails to state a claim on which relief may be granted…." 28 U.S.C. § 1915(e)(2)(B)(i) & (ii). In those situations, the Court has "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Congress' use of the word "shall" in the statute now mandates dismissal for cases meeting the description in § 1915. *See Winston v. United States DOJ*, Civil Action No. PWG-17-3493, 2017 U.S. Dist. LEXIS 209705, at *4 (D. Md. Dec. 19, 2017) ("Indeed, § 1915 was amended after *Neitzke* and *Denton*, such that now the statute *mandates* that a district court '*shall* dismiss' a case upon a finding that the Complaint 'fails to state a claim on

which relief may be granted.' 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added)."). *Winston v. United States DOJ*, Civil Action No. PWG-17-3493, 2017 U.S. Dist. LEXIS 209705, at *4 (D. Md. Dec. 19, 2017). Plaintiff's allegations of a conspiracy among the correctional officers to employ a fake doctor and to poison his food all in an effort to move him out of his cell is conclusory, fantastical, and entirely incredible. Therefore, Defendants are entitled to judgment on Claim # 5.

### *Claim # 6 – Cell Search, February 19, 2014*

In connection with Plaintiff's visit to the emergency room at Five Points Correctional Facility, he alleges that officers searched his cell and allegedly found one gram of marijuana under the bottom bunk mattress along with some personal mail addressed to Plaintiff (Plaintiff was assigned the bottom bunk in that cell). Compl. 74. Plaintiff claims that Defendants acted in retaliation for his previous Article 78 proceeding by planting marijuana in his bunk and writing a false report. Compl 79. Plaintiff also alleges "ORC DONAHUE,"[2] who was assigned to provide him with assistance at the Tier III hearing for a possession of marijuana disciplinary infraction, gave him inadequate assistance. Plaintiff describes ORC DONAHUE as "extremely argumentative & combative & would offer no real help…." Compl. 75. Plaintiff claims violations of his Due Process rights at the Tier III hearing conducted by defendant Lt. Corey. Compl. 74–78 & 80–82. Lt. Corey found him guilty and sentenced him to five months SHU with six months loss of privileges. Defendants do not move against this. Therefore, it may go forward as plead.

---

[2] Plaintiff does not explain what "ORC" means.

*Claim # 7 – Harassment, August 13 & 14, 2013*

Plaintiff alleges that he was on his way to his assigned program in horticulture when defendants Officer Daniels or John Doe # 3 stopped him at a security post, and told him get on the wall for a pat frisk. Compl. 90. Plaintiff alleges that "[d]uring the frisk the Officer was extremely rough squeezing the Plaintiff[']s groin area & credit card swiping him." *Id*. Plaintiff describes credit card swiping as follows: "the Officer uses his whole hand in a vertical position & motions it up & down the crease of the Inmate[']s buttocks, causing extreme discomfort & embarrassment." *Id*. Plaintiff alleges a similar pat frisk occurred on August 14, 2013, and this time Officer Daniels or John Doe # 3 took his identification card and told him to "get the 'fuck out of here,'" and "not to come back to the program building again or you know what wil[l] happen." Compl. 90–91. Plaintiff also claims that in a program progress report, in the comment area, was a comment that he was on keep lock status as of August 13. Compl. 91. Plaintiff claims these actions deprived him of his rights to Due Process. Defendants do not move against this issue. Therefore, it may go forward as plead.

*Claim # 8 – Retaliation, July 10, 2013*

The allegations in his eighth claim are similar to those in the seventh only the date and actor are different. He claims that defendant Correction Officer Lyttle stopped him for a pat frisk, searched him inappropriately, and spoke to him in a derogatory manner asking if Plaintiff liked to file grievances. Compl. 101. Plaintiff states that Correction Officer Lyttle took his identification card without justification and sent him back to his housing unit, thereby causing him to miss recreation, meal, and religious service privileges for approximately two weeks because of the lack of an ID card. Compl. 101.

Defendants counter that a prisoner cannot maintain a Due Process or any other claim for the purported confiscation of property, because prisoners have appropriate remedies at

law to address such claims. The Second Circuit has pointed out that this argument is insufficient when the property is irreplaceable. *Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015). Although an ID card can be replaced, Plaintiff's allegations plead more than simply a missing ID card. That ID card was his key to various privileges, including meals. For that reason, the Court finds that Plaintiff has adequately pled a Due Process and Eighth Amendment claim on these facts. This cause of action against Correction Officer Lyttle may go forward as plead.

### *Claim # 9 – Finger Injury, August 2012*

Plaintiff claims that in August 2012 he injured his finger while playing basketball. He went to sick call complaining of the injury, where defendant Nurse Demmings told him, "he would be placed down for an X-RAY, but did not think they would see me because it was 'only a finger.'" Compl. 109. He claims that Nurse Demings never set up an appointment for him to receive an x-ray, and he went for months without one, and without seeing a specialist, which he had requested. Compl. 109. He claims denial of medical treatment, which caused him to "suffer through months of pain, physical disfigurement, & possible future ailments the Plaintiff may suffer because of but not limited Arthritis, etc." Compl. 110. Defendants do not move against this issue. Therefore, it may go forward as plead.

### *Hearing on Exhaustion of Remedies*

The Prison Litigation Reform Act of 1996 requires a prisoner plaintiff to exhaust administrative remedies before bringing a civil rights lawsuit. 42 U.S.C. § 1997e(a). As the Second Circuit held in *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011), "An inmate's failure to comply with this requirement may be excused where: (1) administrative remedies were not in fact available to the prisoner, (2) 'defendants' own actions inhibit[ed] exhaustion, or (3) special circumstances . . . justify non-exhaustion." *Messa*, 652 F.2d at 309 (quoting *Hemphill v.*

11

*New York*, 380 F.3d 680, 686 (2d Cir. 2004) (internal quotation marks omitted). The Second Circuit has also held that exhaustion, even when the facts are disputed, is a matter for the Court to decide. *Id*.

Defendants contend that Plaintiff failed to exhaust many of his claims and they request a hearing to streamline this case by having the Court decide the exhaustion issues. Defendants contend that Plaintiff filed one grievance with regard to the tobacco smoke claims as it pertained to inmate Green, but did not grieve with regard to anyone else. Further, on the grievance filed pertaining to inmate Green, Plaintiff was provided a remedy (request a medical transfer), which he did not request. In addition, Defendants state that Plaintiff failed to grieve his claims of retaliation and deliberate indifference to a serious medical need, all with respect to the tobacco smoke issue. Holding a hearing now would efficiently decide the issue of exhaustion so that the litigants could proceed with the exhausted claims. Therefore, the Court grants Defendants' request for an exhaustion hearing and will schedule one by separate order.

## CONCLUSION

For the reasons stated above, the Court dismisses Plaintiff's claims numbered 2, 3, 4, and 5. Plaintiff's claims numbered 1, 6, 7, 8, and 9, may go forward as plead. The Court will schedule a hearing regarding exhaustion of claims by separate order.

DATED:     March 6, 2018
                Rochester, New York

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge