UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

_____

ALBERT HARRIOTT, 12-A-3257

                                   Plaintiff,          DECISION AND ORDER
                                                                    15-CV-6135 CJS

      vs.

ANTHONY ANNUCCI, Acting Commissioner
of the New York Department of Corrections, et al.,

                                   Defendants.
_____

## APPEARANCES

For Plaintiff:                            Albert Harriott, *pro se*
                                            12-A-3257
                                            UPSTATE CORRECTIONAL FACILITY
                                            Box 2001
                                            Malone, NY 12953

For Defendants:                       Hillel David Deutsch, A.A.G.
                                            NYS Attorney General's Office
                                            Department of Law
                                            144 Exchange Boulevard
                                            Rochester, NY 14614
                                            (585) 327-3222

## INTRODUCTION

**Siragusa, J.** Before the Court in this prisoner civil rights case is Defendants' motion for summary judgment, filed on August 23, 2018, ECF No. 93. Defendants contend that Plaintiff failed to properly exhaust administrative remedies with at least two, and possibly all three of his smoking bunkmates, or to put the medical officer on notice that he was suffering from second-hand smoke. For the reasons stated below, the Court grants the application.

## BACKGROUND

In its Decision and Order filed on March 8, 2018, ECF No. 76, the Court addressed Defendants' Rule 12(c) motion for judgment on the pleadings and dismissed Plaintiff's claims numbered 2, 3, 4, and 5, and permitted claims numbered 1, 6, 7, 8, and 9 to go forward. The Court then permitted motion practice on the issue of exhaustion and both parties have filed papers concerning that issue. As outlined below, the Court determines that there is no material issue of fact, and that Plaintiff failed to put the facility on notice of the nature of his grievance as required by statute prior to bringing this lawsuit.

Plaintiff contends that he was bunked with three chain-smoking inmates in a cell that had an attached outdoor exercise area (where smoking was permitted). He states that his bunkmates chain-smoked *inside* the cell, where prison regulations prohibited it.

Defendants deposed Plaintiff on May 1, 2018, and provided the Court with a portion of the deposition testimony. Defense Counsel focused on whether Plaintiff had complained to anyone about his in-cell smoking bunkmates. For example, Plaintiff was asked the following questions and gave the following responses:

> Q. Did you write any sort of—let's start with informal grievance, either written or oral, did you—did you tell anybody, hey, he's smoking in the cell, he's not allowed to do that?
>
> A. We both—my bunkmate and I, we both tried—what's the word I'm looking for? We both tried to get separated and get to different cells because he—he—he asked officers, himself, yo, can I go over here with this guy? And I asked officers also, you know, can you just move me over here? I even collected DIN numbers from other dudes that don't smoke. And that's a rarity to find guys in prison that don't smoke.
>
> So I—those are people I would like to also call if I get chance at a deposition because I even did the legwork. So it wasn't no just sitting on my hands. I was—I don't smoke. That's a big deal.
>
> Q. So is there an area in the cell—is there an area that's designed for smoking, like some sort of something outside, by a window, or anything like that?

> A. They say the rec pen. It's a pen that's right attached to the cell, like how you would have an Upstate box.

\* \* \*

> Q. Okay. Did you complain to an officer or a sergeant about him smoking?
>
> A. Yeah. I complained to the gallery officer. I told you at the start, the gallery officer. And then when that didn't work, you ask the sergeant. I wrote the block sergeant about three times. I filed grievances.

Harriott Dep. 8:2–23; 10:8–14. Plaintiff went on to describe that he did file a formal grievance with the Inmate Grievance Clerk, and explained that he was "just receiving a backlash behind the grievance." *Id*. 12:4–5. The Clerk advised him to "sign off" on the grievance to stop the retaliation, and Plaintiff did that, knowing he could reopen the grievance within five years. *Id*. 12:8–13. The "backlash" he was receiving was due to his and his bunkmate's attempts to informally obtain a transfer for either one of them. *Id*. 14:4–9. Thus, Plaintiff voluntarily elected not to go through the grievance process concerning the first bunkmate's chain-smoking inside the cell they shared.

Plaintiff conceded that he did not file a grievance about the second bunkmate he was assigned who also smoked in the cell. *Id*. 18:10–12. He was eventually assigned a third bunkmate, who also smoked. *Id*. 20:13–15. Defense counsel asked the following questions and received the following responses from Plaintiff:

> Q. So why didn't—at any point, why didn't you—well, yeah. At any point, did you go to a corrections officer or to medical and say look, I've got this problem. I've got a bunkmate and he smokes inside the cell. He doesn't smoke in the designated area? Did you ever say that to anyone?
>
> A. I don't think I went to medical and spoke like that. I just told them that listen, I'm—I'm—I'm—I'm getting hurt from the secondhand smoke. I need to be—I need to be moved. I even spoke to counselors. My whole thing was getting moved. The whole legal process that you're explaining now, if I'd have said it like that, then they would have had to move me. If I had known that, I would have said that.

3

> But because I didn't know that, I did my whole—the imperative thing for me was getting out of the secondhand smoke. All I wanted to do was go out of the smoke. I asked to be housed by myself. I found an inmate that doesn't smoke. I tried to cure the process, but they just kept putting me with smokers just to retaliate, instead of just making the thing right.
>
> Q. Okay. The question I'm asking is at any point, did you go to any member of staff?
>
> A. Yes.
>
> Q. When I say any member of staff, I'm including anybody who's employed, whether they're a correctional officer or not, any member of staff at Five Points and say hey, I've got this bunkmate and he's smoking where he shouldn't be. He's smoking inside the cell. Did you ever say that to anyone—any member of staff?
>
> A. I don't—I don't know. I might have. I might have. I don't—I'm not sure. I'm not sure how all the conversations went.

Harriott Dep. 21:5–22:14.

Plaintiff conceded he was "cleared to be double-bunked." *Id*. 22:15–18. This is pertinent to the only grievance he filed and followed through on: the grievance dated December 11, 2012. Deutsch Decl. Ex. B, Aug. 23, 2018, ECF No. 93-5. Regarding that grievance, the Central Office Review Committee ("CORC") wrote:

> Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.
>
> CORC notes from further investigation that the grievant's initial Double Cell Information Sheet was inadvertently misplaced, and that he was moved to a single cell when the error was discovered. CORC asserts that the facility administration has taken appropriate action and a Double Cell Information Sheet was completed after the grievant was re-screened. In addition, it is noted that he was found suitable for double celling. CORC also asserts that the department has a no indoor smoking policy, and has not been presented with a compelling reason to change the screening process for inmates assigned to double cell housing. No malice by staff is noted.
>
> CORC notes that Directive #4040, § 701.6(b) states, in part, that no reprisals of any kind shall be taken against an inmate or employee for good faith utilization of this grievance procedure. An inmate may pursue a complaint that a reprisal occurred through the grievance mechanism.

4

> In regard to the grievant's appeal, CORC asserts that inmates are not entitled to be housed in the cell of their choice, and upholds the discretion of the facility administration to move inmates within the facility. He is advised to address any specific concerns regarding his cell assignment to area supervisory staff and medical issues via sick call for the most expeditious means of resolution.

Deutsch Decl. Ex. B, Aug. 23, 2018, ECF No. 93-5. Defendants contend that the only completed grievance was this that CORC addressed.

*The Parties' Rule 56 Statements*

As required by Western District of New York Local Rule of Civil Procedure 56 (2018 & 2019), Defendants submitted a statement of facts and an *Irby* notice to Plaintiff.[1] Plaintiff filed what he titled a Rule 56 Statement in response. Pl's Rule 56 Statement, Sept. 24, 2018, ECF No. 96. Plaintiff did not dispute Defendants' assertion that he "exhausted a single grievance on the subject of being exposed to Environmental Tobacco Smoke, grievance FTP-26898-12." Def.s' Rule 56.2 [sic][2] Statement ¶ 1. In his responding statement, Plaintiff stated that he filed a New York Civil Procedure Law and Rules Article 78 proceeding, but contrary to the local rule, gives no citation to evidentiary proof of that assertion. Pl.'s Rule 56 Statement ¶ 2.[3] Plaintiff does state that he "complained to Medical Staff at FPCF about being exposed to high levels of ETS on numerous occasions," and that he "complained to Sergeants, Lieutenants, Superintendents & Commissioners" as well as "Congressman Hakeem Jeffries." *Id*. ¶¶ 5–7.

---

[1] Notice to pro se litigants, as required by W.D.N.Y. Loc. R. Civ. P. 56(b) and **Error! Main Document Only.***Irby v. New York City Transit Authority*, 262 F.3d 412, 414 (2d Cir. 2001). Rule 56.2 [sic] Notice, Aug. 24, 2018, ECF No. 93-2.

[2] Under the Court's local rules from 2003, the requirement to file a factual statement with a Rule 56 motion was numbered 56.2. It has been numbered as simply "56" since at least 2011.

[3] The Court's research found a decision by the New York Appellate Division in which that court addressed Plaintiff's complaint about a misbehavior report for a urine test that was positive for cannabinoids. The appellate court upheld the Tier III disciplinary hearing determination. *Matter of Harriott v. Annucci*, 2015 NY Slip Op 06468, ¶ 1, 131 A.D.3d 754, 754, 13 N.Y.S.3d 918, 919 (N.Y. App. Div. 3d Dep't 2015).

*Remaining claims*

Plaintiff's remaining claims consist of the following: (1) double-bunking with a smoker; (6) cell search, February 19, 2014; (7) harassment, August 13 & 14, 2013; (8) retaliation, July 10, 2013; and (9) finger injury, August 2012. The exhaustion issue affects only the first claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underly-

ing facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## ANALYSIS

Defendants argue that despite filing one grievance that was taken through the full appellate process all the way to CORC, he failed to put the correctional facility on notice that his bunkmate was smoking inside the cell and not outdoors in the attached exercise pen. Therefore, they contend that he has failed to meet the requirement of exhaustion set out in 42 U.S.C. § 1997e. The Second Circuit elaborated on the exhaustion requirement in *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004), where it wrote:

> The PLRA's exhaustion requirement is designed to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524-25. As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint "must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004). Thus, the Seventh Circuit has held that, if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

*Johnson*, 380 F.3d at 697. Citing to *Johnson*, the Northern District observed that the grievance "must place defendants on notice of what, substantively, is claimed in order to permit a proper investigation." *Messa v. Woods*, No. 9:07-CV-306, 2009 U.S. Dist. LEXIS 87211, *19, 2009 WL 3076120, *6 (N.D.N.Y. Jul. 30, 2009) (Report & Recommendation), *aff'd* 2009 U.S. Dist. LEXIS 87132, 2009 WL 3076120 (N.D.N.Y. Sept. 23, 2009).

Defendants argue that neither the wording of his grievance, nor his oral complaints, placed the facility on notice that his bunkmate was smoking inside the cell, not just in the

7

outdoor exercise pen. When he stated at his deposition that his bunkmate smoked inside the cell, defense counsel then pursued questions concerning whether Plaintiff ever articulated that concern to anyone, including his bunkmate. He did not. His written grievance contained the following "Description of Problem":

> On 11/8/12 I was, for the second time bunked with a smoker named J. Green (98B1357). He was never screened before being bunked with me. I wrote numerous sergeants & deputies, and had my family call about the smoking issues. I also had a government official send an e-mail about the first issue I had with the smoking, only to be bunked with another smoker. These issues are deteriorating my health.

Inmate Grievance Complaint No. FPT-26898-12 *attached to* Deutsch Decl. as Ex. B. In the section titled "Action requested by inmate," he wrote: "to not be subjected to second hand smoke and to stop all! retaliation by all administrative staff." *Id*.

Jeffrey Rocker, Deputy Superintendent for Security at Five Points Correctional Facility, submitted a declaration in which he explained how smoking grievances were handled. He stated:

> 4. When an inmate files a grievance about a smoking bunkmate, there are two possible scenarios, which engender two different investigations. If an inmate grieves only that his bunkmate is a smoker, but does not inform the facility the bunkmate is smoking inside the cell, the only question is whether the grievant is cleared to double bunk. If he has been so cleared, the investigation ends, as there is nothing further of relevance, and the grievant is informed that he should discuss any medical issues with medical staff. If medical staff determines the inmate should not be bunked with a smoker for medical reasons, he will be transferred to a different cell, given a non-smoking bunkmate, or permitted to single bunk.
>
> 5. If an inmate is cleared to double bunk, and medical staff does not change that status (either because medical staff finds no problem or because the inmate refuses to discuss the issue with medical staff), there is no penological basis for an inmate to be moved to a different cell or given a different bunkmate. The potential inconveniences of having a smoking bunkmate do not create cause for a transfer. Inmates are not entitled to the cellmate of their choice and sometimes incarceration creates living conditions which are inconvenient.

6. If, however, an inmate grieves that his bunkmate is smoking inside the cell, a different investigation entirely is undertaken. No inmate is cleared to bunk with an inmate who smokes inside the cell.

7. Accordingly, a typical investigation into such a grievance would include interviewing the grievant, the grievant's bunkmate, any potential witnesses who may have seen the grievant's bunkmate smoking in the cell, to determine if the allegations are correct. Staff may also be asked to watch for incidents or evidence of the grievant's bunkmate smoking in the cell.

8. If the inmate is found to be smoking in the cell, he will be given a warning, and if he persists, he would likely receive a misbehavior report.

9. Such an investigation is time consuming, risks creating friction between inmates, and may result in the smoking party getting a misbehavior ticket, so it is not undertaken unless the grievant explicitly alleges that his bunkmate smokes in the cell.

10. In the event an inmate believes his grievance has been misunderstood based on the response given by the IGRC, he must note this in his appeal to the Superintendent, as the appeal is the inmate's opportunity to explain what should have been investigated or what he is trying to grieve.

11. If, for instance, an inmate grieved only that his bunkmate smoked, but intended to grieve that his bunkmate smoked in the cell, his appeal to the Superintendent would be his opportunity to explain that believed his bunkmate should have been interviewed or an investigation conducted into his bunkmate smoking in the cell. If an issue such as a bunkmate who smokes in the cell is not stated in the grievance or appeal, the facility will have no knowledge of it and will be unable to investigate it.

12. If an inmate is experiencing medical problems as a result of a situation arising in a cell, whether the source is a bunkmate who smokes or any other reason, said inmate will be transferred out of a cell if it is deemed medically necessary by medical staff.

13. To obtain a medical transfer, the inmate must address the issue to medical staff. If, for instance, medical staff determines that an inmate cannot be bunked with a smoking inmate for medical reasons, the inmate will be provided a non-smoking bunkmate or placed in a single cell....

16. By failing to alert staff of the fact his bunkmate smoked in the cell or the physical toll he now claims the smoke exposure caused, Plaintiff failed to put the facility on notice of his complaint and did not allow the facility any opportunity to rectify the problem.

Rocker Decl. ¶¶ 4–13 & 16, Aug. 23, 2018, ECF No. 93-3. Leorna Deming, a registered

nurse at Five Points Correctional Facility, provided a declaration in which she reviewed Plaintiff's medical records and determined that "from the beginning of December 2012 through the end of February 2013, Plaintiff visited sick call four times. He did not complain of smoking-related injuries, diseases or ailments on any of these occasions." Deming Decl. ¶ 5, Aug. 23, 2018, ECF No. 93-4.

Because Plaintiff failed to put the facility on notice that his third bunkmate was smoking in the room, and failed to grieve smoking by his first two bunkmates, he has not complied with the exhaustion requirement set out in 42 U.S.C. § 1997e.

## CONCLUSION

Plaintiff has failed to exhaust his first claim (double-bunking with a smoker). Accordingly, the Court grants Defendants' motion for summary judgment, ECF No. 93, and dismisses the first claim. The following claims remain: (6) cell search, February 19, 2014; (7) harassment, August 13 & 14, 2013; (8) retaliation, July 10, 2013; and (9) finger injury, August 2012.

IT IS SO ORDERED.

DATED: October 17, 2019
         Rochester, New York

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge