## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

---

ALBERT HARRIOTT,

                                        Plaintiff,

                    -vs-                                    DECISION AND ORDER

ANTHONY ANNUCCI, *Acting Commissioner*                      15-CV-6135 (CJS)
*of the New York Department of Corrections,*
*et al.,*

                                        Defendants.

---

Plaintiff Albert Harriott ("Harriott") brought this case, *pro se*, pursuant to 42 U.S.C. § 1983 alleging a multitude of violations of his civil rights during his imprisonment at Five Points Correctional Facility.[1] Of Harriott's nine original claims, four have survived Defendants' prior motion to dismiss and motion for partial summary judgment, respectively: retaliation and due process claims against defendants Corrections Officer Rogers, Sergeant Jones, ORC Donohue, and Lieutenant Corey related to a cell search and subsequent disciplinary hearing on February 19, 2014; a harassment claim against defendant Corrections Officer "Daniels/John Doe #3" for searches of his person on August 13 and 14, 2013; retaliation and due process claims against defendant Corrections Officer Lyttle for a search of his person and confiscation of his I.D. card on July 10, 2013; and a denial of medical care claim against defendant Nurse Demings related to an injury Harriott

---

[1] Harriott has since been transferred several times, most recently to Auburn Correctional Facility. Notice, June 22, 2020, ECF No. 109.

sustained to his pinky finger in July/August 2012. *See* Decision and Order, 10, Oct. 18, 2019, ECF No. 103.

The matter is now before the Court on Defendants' motion for summary judgment on Harriott's retaliation and due process claims against defendants Rogers, Jones, Donohue, and Corey; his retaliation and due process claims against defendant Lyttle; and his denial of care claim against defendant Demings. Mot. Summ. J., Nov. 30, 2020, ECF No. 116. Defendants have filed and served upon Harriott an appropriate *Irby* notice. Notice, Nov. 30, 2020, ECF No. 116-2.

For the reasons stated below, Defendants' motion [ECF No. 116] is granted, and Harriott's claims against defendants Demings, Lyttle, Rogers, Jones, Donohue, and Corey are dismissed.

## SUMMARY JUDGMENT STANDARD

It is well-settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (stating that summary judgment is only appropriate where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party."). A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Moreover, "[a] party asserting that a fact

. . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1).

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The non-movant cannot oppose a properly-supported summary judgment motion with bald assertions that are not supported by the record. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999). Rather, the non-movant must support its assertion that a fact is genuinely disputed by citing to particular parts of the record, or showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

Courts must view the underlying facts contained in affidavits, attached exhibits, and depositions, in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Further, when a litigant is *pro se*, his pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the *pro se* litigant must still establish the existence of genuine issues of material fact to survive a motion for summary judgment: a *pro se* party's "bald assertion," when unsupported by evidence, is insufficient. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995).

**DISCUSSION**

The legal principles applicable to claims filed pursuant to 42 U.S.C. § 1983 are well settled. In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a constitutional right. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 181 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

As indicated above, Defendants' motion for summary judgment addresses several claims that Harriott asserts under § 1983: retaliation and due process claims against defendants Rogers, Jones, Donohue, and Corey related to a search of his cell on February 19, 2014 and subsequent disciplinary hearing; retaliation and due process claims against defendant Lyttle for an incident that allegedly occurred on July 10, 2013; and a denial of care claim against defendant Demings for her conduct in treating Harriott's injured pinky finger. For ease of discussion, the claims are considered in chronological order.

Harriott's Allegations Against Nurse Demings

Harriott claims that defendant Demings, a nurse at Five Points Correctional Facility, violated his constitutional rights when she denied him proper medical care for his injured pinky finger.

The record[2] shows that in July or August of 2012, Harriott reported to Nurse Demings that he had injured his pinky finger. Def. Rule 56 Statement, ¶ 15, Nov. 30, 2020, ECF No. 116-1 ("Def. Statement"); Pl. Opposing Statement, ¶ 15, Jan. 4, 2021, ECF No. 119 ("Pl. Statement"). Harriott alleges that, at that time, Nurse Demings falsely told him that she had ordered an x-ray for his injury, and that she ridiculed him about his injury throughout treatment. Pl. Statement at ¶ 16–17. On November 13, 2012, Harriott was seen again by medical staff for his pinky injury. Def. Statement at ¶ 17. On November 21, 2012, medical staff performed an x-ray of Harriott's pinky finger, and found no fractures. Def. Statement at ¶ 17–18.

On January 25, 2013, Harriott was seen again for pain in his pinky, and was referred for an orthopedics consultation. Def. Statement at ¶ 20. Pursuant to the consult, Harriott received physical therapy. Def. Statement at ¶ 21. Harriott states that the physical therapy alleviated some of his pain and gave him back some range of motion in his hand, but that Nurse Demings' slowness to act led to permanent disfigurement of his pinky finger. Pl. Statement at ¶ 20.

To establish an unconstitutional denial of medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, (1976)) (internal quotation marks omitted). In the present case, drawing all reasonable

---

[2] For the purposes of this motion, the "record" consists of Harriott's verified complaint, and the statements of fact and related appendices that the parties are required to submit under local rule of civil procedure 56(a)(1). *See, e.g., Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment.")

inferences in favor of Harriott, no reasonable trier of fact could find either that Harriott's medical need with respect to his pinky finger was "serious," or that Nurse Demings was deliberately indifferent.

The court's analysis with respect to "deliberate indifference" includes both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). To satisfy the objective element, "the alleged deprivation must be, in objective terms, sufficiently serious." *Hall v. New York*, 476 F. App'x 474, 477 (2d Cir. 2012) (citing *Hathaway*, 37 F.3d at 66) (internal quotation marks omitted). To satisfy the subjective element, "the charged official must act with a sufficiently culpable state of mind." *Id*. The defendant acts with deliberate indifference only if she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

After a thorough review of the record, the Court finds that Defendants have met their burden to show that no genuine dispute exists with respect to Harriott's condition or the medical treatment he received, and that Harriott has failed to satisfy his burden of showing both that his medical condition was sufficiently serious and that Nurse Demings was deliberately indifferent.

A "serious medical need" is one which presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation omitted). In determining whether a serious medical

need exists, the Court examines several factors, including "the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment; significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McMillon v. Davidson*, 873 F. Supp.2d 512, 514 (W.D.N.Y. 2012) (citation omitted). Although Harriot asserts that his pinky is now disfigured, he has provided no documentary evidence about the specifics of his condition, how it affects his daily activities, or whether or not it is the source of chronic and substantial pain. *See* Compl. (Ex. 9-D), 14, Mar. 11, 2015, ECF No. 1-1 (providing a detailed summary of services provided to Harriott, and noting that he was "seen at sick call on 9/29[/12] and 10/29/12 with no finger complaints noted). *See also Henderson v. Doe*, No. 98 CIV. 5011 (WHP), 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (quoting, *inter alia*, *Rivera v. S.B. Johnson*, 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection.")).

Moreover, even if Harriott's condition was sufficiently serious, he has not shown that Nurse Demings acted with deliberate indifference. In that regard, he does not show that she believed the pinky to be an excessive risk to his health or safety. Even taking Harriott's claims as true that Nurse Demings lied to him about putting him on the list to receive an x-ray, and that she ridiculed him about his injury, and even assuming that he is correct that he should have been treated more aggressively for his pinky injury, such claims would not show that Nurse Demings "knew of and

disregarded an excessive risk to" Harriott's health or safety. *See, e.g., Dallio v. Hebert*, 678 F. Supp.2d 35, 45 (N.D.N.Y. 2009) (finding insufficient evidence to raise a genuine issue of material fact that defendants were deliberately indifferent where defendants responded to Plaintiff's request for medical attention on more than one occasion).

Accordingly, Harriott has failed to meet his burden to survive Defendants' motion for summary judgment against his denial of care claim, and the claim must be dismissed.

<u>Harriott's Allegations Against Defendant Corrections Officer Lyttle</u>

Harriott claims that defendant Lyttle, a corrections officer at Five Points Correctional Facility, deprived him of his due process rights and retaliated against him for filing grievances with the facility administration. In particular, Harriott alleges that on July 10, 2013, he was "randomly" stopped on his way to a program, that Corrections Officer Lyttle searched him "extremely inapprop[r]iately," and that "Lyttle also spoke to [him] derogatorily and asked him if he liked to file grievances." Compl. at 101. When asked to elaborate further, Harriott testified at his deposition that the search was "uncomfortable . . . . Like, you know, sometimes officers get on you, like too close to you . . . . Face to neck and you know, just uncomfortable." Deutsch Decl. (Ex. E), 120–121, Nov. 30, 2020, ECF No. 116-3. Harriott also claims that after the search, Corrections Officer Lyttle took his I.D. card without justification, and that Harriott was subsequently denied multiple privileges, such as recreation time. Compl. at 101.

*Retaliation Claim*

Retaliation claims have their basis in the First Amendment. To succeed on a retaliation claim, the plaintiff must show "(1) that the [plaintiff's] speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The Second Circuit has made clear that courts must scrutinize retaliation claims with "particular care." *King v. McIntyre*, No. 9:11-CV-1457, 2015 WL 1781256, at *4 (N.D.N.Y. Apr. 8, 2015) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). Such claims "involve questions of intent and are therefore easily fabricated . . . [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Notwithstanding Harriott's failure to specify the precise grievances for which Corrections Officer Lyttle was allegedly retaliating, it is undisputed that filing prison grievances is a protected activity. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). In addition, the Court will presume that Corrections Officer Lyttle's alleged question – "you like to file grievances?" – is sufficient at this stage of the proceedings to demonstrate a retaliatory motive.

Harriott fails, however, to produce sufficient evidence to demonstrate that Corrections Officer Lyttle performed an "adverse action." An adverse action for purposes of a retaliation claim is conduct that "would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes*, 239 F.3d at 493). "In making this determination, the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that [p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* (internal quotation marks and citation omitted).

The Court finds that Harriott has failed to identify evidence that would justify a jury verdict in his favor with respect to Corrections Officer Lyttle's alleged inappropriate search. "[P]at frisks are an ordinary part of prison life and would not (and do not) deter the average inmate from continuing to exercise his First Amendment rights." *Henry v. Annetts*, No. 08 CIV. 286 LAP, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010). Therefore, "pat frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim." *Houston v. Coveny*, No. 14-CV-6609-FPG, 2020 WL 1151345, at *6 (W.D.N.Y. Mar. 9, 2020), *on reconsideration in part*, No. 14-CV-6609-FPG, 2020 WL 2494439 (W.D.N.Y. May 14, 2020) (collecting cases).

Further, Harriott has likewise failed to demonstrate that Corrections Officer Lyttle's confiscation of the I.D. card was an adverse action. Even assuming that Harriott's claim is true, "[t]he law is clear that under most circumstances . . . a single instance of confiscation does not constitute an adverse action for the purposes of a retaliation claim." *Thomas v. Delaney*, No. 917CV1023GLSCFH, 2019 WL 4247807,

at *18 (N.D.N.Y. Aug. 13, 2019), *report and recommendation adopted*, No. 917CV1023GLSCFH, 2019 WL 4242268 (N.D.N.Y. Sept. 6, 2019) (quoting *Shannon v. Venettozzi*, No. 13 CIV. 4530, 2015 WL 114179, at *6 (S.D.N.Y. Jan. 8, 2015)). Harriott admits that prisoners can get a new I.D. card by filling out a form and paying two dollars for a new one, and even included with his complaint a copy of his disbursement form for a new I.D. card, dated the same day as Corrections Officer Lyttle's alleged retaliation. Compl. (Ex. 8-B); Deutsch Decl. (Ex. E) at 122..

Harriott further admits that, other than taking his I.D. card, Corrections Officer Lyttle was not involved in actually denying Harriott any privileges. Deutsch Decl. (Ex. E) at 126 (Question: "And did Officer Lyttle ever tell you that [you can't go to recreation without an I.D. card]?", Answer: "He was not . . . our company officer . . . so no."). In short, where Harriott claims that on a single occasion Corrections Officer Lyttle took Harriott's I.D. card, which could be replaced by paying two dollars, but does not claim that Corrections Officer Lyttle participated in any further denial of Harriott's privileges, the Court finds the alleged retaliatory conduct to be *de minimis* and thus insufficient to support a retaliation claim. *See Quezada v. Roy*, No. 14-CV-4056 (CM), 2017 WL 6887793, at *13 (S.D.N.Y. Dec. 14, 2017).

*Due Process Claim*

In addition to a claim for retaliation, Harriott also asserts that Corrections Officer Lyttle's unjustified confiscation of his I.D. card deprived him of his due process rights because he was "denied meal, recreation, and religious service privileges for close to 2 weeks." Compl. at 102.

"Generally, due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299 (1981)). However, "[w]here a deprivation [of due process] at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing [to the plaintiff], due process requires only a post-deprivation proceeding." *DiBlasio*, 344 F.3d at 302 (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).

With respect to property claims by prison inmates, the Second Circuit has held that New York provides an adequate post-deprivation remedy in the Court of Claims. *See, e.g., Barnes v. Fedele,* 760 F. Supp.2d 296, 303–04 (W.D.N.Y. 2011) (citing, *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir.1996); *Love v. Coughlin*, 714 F.2d 207, 209 (2d Cir.1983); *Jones v. Harris*, 665 F.Supp.2d 384, 401 (S.D.N.Y.2009) (taking judicial notice of the fact that DOCS has a procedure for a prisoner to follow if he believes he has been wrongfully deprived of property, and stating that "[i]n the ordinary course, these procedures afford a prisoner all the process he is due")). Thus, to the extent that Harriott's due process claim against Corrections Officer Lyttle involves the confiscation of Harriott's property, the claim fails because Harriott had an adequate remedy in the New York Court of Claims.

The alleged due process violation here, though, is not simply the confiscation of the I.D. card, but includes also the failure to allow Harriott to continue

participating in certain prison privileges, such as time in recreation.[3] As the Supreme Court has explained:

> . . . States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). Assuming Harriott's deposition testimony to be true, at most he was deprived for two weeks of his ability to go to "the main yard" and "the gym," and to send certified mail, but during which time he was permitted to go to meals and to the "block yard." Deutsch (Ex. E) at 123–126. The Court finds that this does not present a "dramatic departure from the basic conditions" of Harriott's sentence, impose an "atypical or significant hardship," or affect the duration of his sentence, such as creates a liberty interest that would invoke the procedural guarantees of the Due Process Clause. *Sandin*, 515 U.S. at 486–487.

Accordingly, the Court finds that Harriott has failed to demonstrate specific facts that would support a jury verdict in his favor on his retaliation and due process claims against defendant Corrections Officer Lyttle, and those claims must be dismissed.

---

[3] Harriott's original complaint seemed to suggest that Harriott was deprived of meals. However, his deposition testimony clarified that he could still "go to chow." Deutsch Decl. (Ex. E) at 124.

<u>Allegations Regarding February 19, 2014 and Subsequent Disciplinary Hearing</u>

Finally, Harriott presents two claims related to a search of his cell on February 19, 2014 and the subsequent disciplinary hearing.

On February 19, 2014, Harriott was taken to the facility's infirmary for an emergency sick call. Compl. 65–74 (describing three days of vomiting and other symptoms prior to February 19, 2014). While Harriott was away from his cell, defendants Corrections Officer Rogers, Sergeant Jones, and at least one other corrections officer searched Harriott's cell. Pl. Statement at ¶ 3. The following day, Harriott was served with a misbehavior report stating that one gram of marijuana had been found in his bunk. Def. Statement at ¶ 1.

At the subsequent disciplinary hearing, Harriott called two witnesses: his cellmate and Corrections Officer Rogers. Def. Statement at ¶ 2–3. Harriott's cellmate testified that he was present in the cell when it was searched, and that the search lasted about 20 minutes. Def. Statement at ¶ 2. However, the cellmate also testified that he wasn't wearing his glasses, and could not see the whole search. Def. Statement at ¶ 2. Harriott's cellmate stated that, in the three weeks during which they were cellmates, he had never seen Harriott do illegal drugs. Deutsch Decl. (Ex. A) at 29.

Corrections Officer Rogers testified that he found a substance that appeared to be marijuana in a latex glove under Harriott's bunk, that the search lasted approximately 9 minutes, that he turned the suspicious substance from Harriott's cell over to an expert for testing, and that the tester confirmed the substance to be

marijuana. Def. Statement at ¶ 2. Additionally, Corrections Officer Rogers repeatedly denied that he could have been mistaken as to in whose cell, and under whose bunk, he discovered the marijuana. Deutsch Decl. (Ex. A) at 30–39.

At the disciplinary hearing for his infraction, Harriott requested video and audio recordings of the search of his cell. Pl. Statement at ¶ 5. The hearing officer, defendant Lieutenant Corey, informed him that recordings could not be provided because of mechanical failure of the camera located in the hallway outside of Harriott's cell, and that in any event the video would not have shown the search because the camera shows only the hallway and not the inside of the cell. Def. Statement at ¶ 4–6. After the hearing, Harriott was found guilty of possessing marijuana and given twelve months in the special housing unit, which was later reduced to five months. Def. Statement at ¶ 7. "This incident was [Harriott]'s fourth misbehavior report in the prior six months, and his second in three days." Def. Statement at ¶ 8. The misbehavior report immediately prior to the marijuana possession was for drug use. Def. Statement at ¶ 8.

Harriott alleges that defendants Corrections Officer Rogers and Sergeant Jones violated his constitutional rights by planting drugs under his mattress and drafting a false misbehavior report against him in retaliation for an Article 78 petition he had filed against prison administrators three weeks before. Harriott also alleges that "ORC Donohue," Harriott's hearing assistant for the disciplinary hearing, violated his due process rights when "he intentionally offered no help to [Harriott] . . . verbally harassed and insulted [Harriott], [and] purposely hindered the

hearing by being inept in securing evidence the Plaintiff needed to defend himself." Compl. at 81. Finally, Harriott maintains that Lieutenant Corey, the hearing officer, violated his due process rights when he denied him a copy of the video of the February 19, 2014 search; denied him an opportunity to probe the inconsistencies between his cellmate's testimony that the search took 20 minutes and Corrections Officer Rogers' testimony that it took 9 minutes; knew the misbehavior report was false; failed to address his claims of harassment and retaliation; changed the testimony of Corrections Officer Rogers; failed to call "Specialty Officers to lay any foundation as to the testing of the marijuana"; and gave Harriott a "hefty sentence on no evidence of any substance . . . ." Compl. at 81.

*Harriott's Claims Against Corrections Officer Rogers and Sergeant Jones*

Harriott claims Corrections Officer Rogers and Sergeant Jones planted marijuana in his cell, and then filed a false misbehavior report against him. He maintains that this conduct constitutes a violation of his due process rights, and retaliation for Harriott's litany of grievances filed previously with prison administration.

With respect to Harriott's due process claim against Rogers and Jones, the Court finds Harriott's claim that Rogers and Jones planted the marijuana in his cell to be a bald assertion insufficient to survive a summary judgment motion. Defendants have submitted Corrections Officer Rogers' misbehavior report and hearing testimony to demonstrate where he found the marijuana, and Harriott has failed to cite to any contradictory evidence in the record or demonstrate that Rogers' testimony

is inadmissible. *Bickerstaff,* 196 F.3d at 452. Although Harriott's cellmate testified that he had never seen Harriott do illegal drugs in their three weeks together as cellmates, such testimony alone does not create the inference that Corrections Officer Rogers and Sergeant Jones planted the marijuana, particularly in light of Harriott's testing positive for marijuana use a mere three days before the search of his cell. *See* Deutsch Decl. (Ex. B). Further, the Court notes that "[t]here is no basis for a constitutional claim alleging the mere filing of a false report." *Moore v. Casselberry*, 584 F. Supp.2d 580, 582 (W.D.N.Y. 2008); *see also Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005).

Harriott's claim of retaliation against Rogers and Jones cannot survive Defendants' summary judgment motion either. As indicated above, to succeed on a First Amendment retaliation claim, the plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill*, 389 F.3d at 380. Nevertheless, retaliation claims must "be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Harriott's statement, in his verified complaint, that he filed an Article 78 petition against prison superintendent, defendant M. Sheahan, and multiple members of the prison administrative staff is sufficient to demonstrate that he was engaging in protected speech. In addition, although the Court finds that Harriott's

allegation that Corrections Officer Rogers and Sergeant Jones planted the marijuana in his cell to be a bald assertion, the Court will presume for the purposes of the instant motion that Rogers and Jones took adverse action against Harriott.

Yet even if Harriott could demonstrate the first two elements of a retaliation claim, he has failed to carry his burden of demonstrating a causal connection between his Article 78 proceeding and Corrections Officer Rogers' and Sergeant Jones' conduct. To succeed in a retaliation claim, the plaintiff must demonstrate a causal connection sufficient to support an inference that the protected conduct played a substantial part in the adverse action. *Davis*, 320 F.3d at 354 (citing *Dawes*, 239 F.3d at 492). In determining whether a causal connection exists, the court may consider a number of factors, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation. *See Abreu v. Farley*, No. 6:11-CV-06251 EAW, 2019 WL 1230778, at *23 (W.D.N.Y. Mar. 15, 2019) (quoting *Bunting v. Conway*, No. 04-CV-0731A (HKS), 2010 WL 5332280, at *7 (W.D.N.Y. Nov. 1, 2010) (citing *Colon v. Coughlin*, 58 F.3d 865, 872–73 (2d Cir. 1995)). *See also Baskerville v. Blot*, 224 F. Supp.2d 723, 732–33 (S.D.N.Y. 2002).

Given that the cell search and misbehavior report occurred three weeks after Harriott filed his Article 78 petition against Defendant Sheahan, Harriott appears to be relying on the temporal proximity between his petition and the alleged retaliatory acts to establish the necessary causal connection. However, "[a]lthough the temporal

proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment." *Williams v. Goord*, 111 F. Supp.2d 280, 290 (S.D.N.Y. 2000) (citing *Ayers v. Stewart*, 101 F.3d 687, No. 96–2013, 1996 WL 346049, at *1 (2d Cir. 1999)). *See also Abreu*, 2019 WL 1230778 at *23 (collecting cases).

All of the remaining causal connection factors weigh strongly against Harriott. With respect to the second element, prior disciplinary record, Defendants have submitted a document outlining Harriott's six disciplinary infractions between October 2013 and May 2015. Deutsch Decl. (Ex. B.), ECF No. 116-3. Of those six infractions, two of them occurred within one week of Rogers' and Jones' search of Harriott's cell: on February 13, 2014 Harriott was reported for smuggling, and on February 16, 2014 Harriott was reported for drug use. Deutsch Decl. (Ex. B). Harriott was disciplined after separate hearings on both charges, and the discipline was affirmed on appeal in each instance. Deutsch Decl. (Ex. B). Similarly, the third element, vindication at a hearing on the matter, weighs against Harriott because he was not vindicated at a hearing subsequent to the search, but was found guilty of drug possession, and that finding was not reversed on appeal.[4] Lastly, Harriott has failed to identify any statements by either Rogers or Jones indicating that their motive for the search was retaliation. In fact, as Defendants point out, Harriott's two

---

[4] While the finding of guilt was not reversed, Harriott's original punishment of 12 months in the Special Housing Unit was reduced to 5 months. Deutsch Decl. (Ex. B).

prior infractions – for smuggling and drug use – suggest legitimate cause for the cell search.

Consequently, the Court finds that Harriott has failed to carry his burden of demonstrating facts that would justify a jury verdict in his favor at trial, and his due process and retaliation claims against Corrections Officer Rogers and Sergeant Jones must be dismissed.

*Due Process Claims Against defendants Donohue and Corey*

A prison inmate's due process rights with respect to a disciplinary hearing "do not equate to 'the full panoply of rights' due to a defendant in a criminal prosecution." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Rather, a prison inmate charged with a disciplinary infraction is entitled under the Due Process Clause to: "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481 (2d Cir. 2004) (citing, *inter alia*, *Wolff*, 418 U.S. at 553–567). Further, "the Supreme Court has clarified that judicial review of the written findings required by due process [in an inmate's hearing] is limited to determining whether the disposition is supported by 'some evidence.'" *Sira*, 380 F.3d at 69 (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).

A review of the transcripts of Harriott's hearing indicates that Harriott was afforded the process to which he was entitled under the Constitution. Harriott acknowledged at the hearing that he was served with a copy of his misbehavior report on February 20, 2014, by Corrections Officer Burns. Deutsch Decl. (Ex. A), 1, ECF No. 116-3. Harriott had initially refused hearing assistance, but when the hearing officer, Lieutenant Corey, realized that Harriott actually wanted an assistant to help find witnesses and gather documentation, he adjourned the hearing and assigned "ORC Donohue" to assist Harriott. Deutsch Decl. (Ex. A) at 2–3. Notwithstanding Harriott's claim that ORC Donohue deprived him of due process by verbally harassing and insulting him and not securing evidence, the record shows that Harriott was afforded the witnesses he wanted to call – his cellmate and Officer Rogers – and that he was able to submit documents. The only evidence that ORC Donohue could not procure for Harriott were the video recordings of the hallway outside Harriott's cell that did not exist, and urinalysis tests for which Harriott had failed to specify dates. *See* Deutsch Decl. (Ex. A) at 4; Compl. (Ex. 4-C); and Compl. at 50.

Moreover, although Harriott maintains that Lieutenant Corey was not a fair and impartial hearing officer, the hearing transcript does not support Harriott's claims. For instance, the video that Harriott claims to have been deprived of was not really denied, but simply did not exist due to a system failure. Deutsch Decl. (Ex. A) at 4. Further, throughout the hearing Lieutenant Corey patiently allowed Harriott to make a record of his objections and elaborate on his theory of the case, despite Harriott's numerous failures to follow proper procedure and his interjection of

multiple irrelevant objections. Deutsch Decl. (Ex. A) at 5–49. Harriott was given the opportunity to call witnesses and to submit documentary evidence such as a letter from his mother, and two letters from the prison commissioner regarding Harriott's complaints and concerns about sharing a cell with inmates who smoke. Deutsch Decl. (Ex. A) at 17.

Moreover, the record shows that the "some evidence" standard was amply met at Harriott's hearing. *Sital v. Burgio*, 592 F. Supp.2d 355, 358 (W.D.N.Y. 2009). Harriott's own verified complaint acknowledges that Corrections Officer Rogers filed a misbehavior report against Harriott on the same day as the cell search, indicating that he discovered a latex glove containing a green leafy substance beneath Harriott's bunk; that he turned the marijuana over to Officer Henderson, a certified NIK tester, for testing; and that the tests showed the substance was marijuana. Compl. (Ex. 6-A) at 84. Corrections Officer Rogers' testimony at the hearing was substantially the same as his report, except he got confused momentarily about which officer he gave the leafy substance to for testing. *See* Deutsch Decl. (Ex. A), ECF No. 116-4 at 32.

Accordingly, the Court finds that Harriott has failed to satisfy his burden of demonstrating entitlement to a jury verdict at trial, and his due process claims against ORC Donohue and Lieutenant Corey must be dismissed.

## HARRIOT'S REMAINING CLAIM(S)

Having dismissed Harriott's claims against defendants Demings, Lyttle, Rogers, Jones, Donohue, and Corey for the foregoing reasons, the Court notes that Harriott's only remaining claim is against defendant "Daniels/John Doe #3," an

unknown corrections officer. However, Harriott's claim against defendant "Daniels/John Doe #3," appears to be time-barred.

42 U.S.C. § 1983 does not provide a specific statute of limitations. Thus, § 1983 actions filed in New York are subject to the three-year statute of limitations under state law for personal injury actions. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *see* N.Y. C.P.L.R. § 214. Generally, "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993) (internal citations omitted). Where a plaintiff uses "John Doe" or some other fictitious name as a placeholder defendant because the plaintiff does not know the identity of an individual defendant, he is required to replace the placeholder with a named party within the applicable statute of limitations period. *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–70 (2d Cir. 1995).

Here, Harriott's § 1983 claim against Defendant "Daniels/John Doe #3" accrued in August 2013, and appears to have expired under the applicable three-year statute of limitations. *See, e.g., Abreu v. City of New York*, 657 F. Supp.2d 357, 363 (E.D.N.Y. 2009). At no point prior to the expiration of the limitations period, or subsequently, did Harriott seek to amend his pleading to substitute a named party for the placeholder "Daniels/John Doe #3" defendant. Nor is there any indication that Harriott attempted to ascertain from the other Defendants the identity of that unknown individual. On May 11, 2015, counsel for the Defendants notified Harriott's

counsel that he was unable to find any information about the alleged August 2013 incidents. Resp., May 13, 2015, ECF No. 4. Further, Harriott was informed by letter on September 23, 2013 that there was no employee of the name of Officer Daniels at Five Points Correctional Facility, and he has not taken additional steps – indeed, he declined to cooperate with an investigation by prison administrators – to properly identify the individual. Compl. (Ex. 7-B), 98, Mar. 11, 2015, ECF No. 1. Consequently, the Court cannot discern a basis for equitable tolling from the present record.

Nevertheless, in light of Harriott's *pro se* status and Second Circuit precedent, Harriott will have an opportunity to demonstrate why his claim against "Daniels/John Doe #3," stemming from the alleged inappropriate searches on August 13 and August 14, 2013, should not be dismissed as time-barred. *See Abbas v. Dixon*, 480 F.3d 636, 639–40 (2d Cir. 2007) (district court should not dismiss a *pro se* prisoner's complaint on the basis of an anticipated statute of limitations defense without first granting notice and an opportunity to be heard). Within thirty days of the date of this order, Harriott may file an amended complaint with respect to this claim, in which he must state why his claims are not time-barred, including any basis for equitable tolling of the statute of limitations.

<u>CONCLUSION</u>

Consistent with the foregoing, it is hereby

ORDERED that Defendants' motion for summary judgment [ECF No. 116] is granted as to Harriott's claims against defendants Demings, Lyttle, Rogers, Jones, Donohue, and Corey; and it is further

ORDERED that, if Harriott wishes to file an amended complaint regarding the alleged inappropriate searches on August 13 and August 14, 2013, he must do so NO LATER THAN June 14, 2021. The amended complaint should be captioned "Amended Complaint," and relate ONLY to the alleged August 13 and August 14, 2013 incidents. The complaint must properly identify "Daniels / John Doe #3," and clearly state why Harriott's claims related to the incidents on August 13 and 14, 2013 are not time-barred, including any basis for equitable tolling of the statute of limitations. If Plaintiff fails to file an amended complaint by June 14, 2021, or if the amended complaint fails to comply with this Decision and Order or fails to provide a sufficient showing that Harriott's claim is not time-barred, this action will be dismissed with prejudice.

SO ORDERED.

DATED:     May 18, 2021
           Rochester, New York


CHARLES J. SIRAGUSA
United States District Judge